Michael Dempsey for Gerson Fox your honor I just want to emphasize one thing at its heart this is a case about whether the attorney-client privilege that Gerson Fox held was waived and the court will recall that at the beginning of the discussions between the Fox family on the one hand and Buckholder on the other based on the declaration of Ted Fox and based on the email that Mr. Fox sent to Buckholder Mr. Fox Ted Fox made plain that because of Gerson's age and ill health he would be the one who would be handling the communications the written communications on behalf of Gerson. Buckholder is a California law firm Fox's were California residents it was the litigation at issue was filed as entered into in California at all times the Fox's were entitled to believe that under California law Mr. Ted Fox could act as liaison for Gerson Fox. Mr. Orman the Buckholder partner to whom the email was sent by Ted Fox saying I understand this will be privileged it's important that my communications on behalf of my Can you tell us what the basis of our jurisdiction is? The base of your jurisdiction under Perlman and under Blinder Robinson is that the orders of the bankruptcy court and the district court allowing the production of the records to go forward was immediately appealable and Robinson says in as I there is a third-party subpoena. So is Buckholder an uninterested third party because they seem to be very interested here I mean that was the rule in Perlman I mean that that wouldn't have a incentive to so but here Buckholder seems quite interested in the proceedings. Buckholder had a an economic interest they were not a party to the litigation they made a claim in the claim is now being arbitrated before Judge DeVriesian. So you're saying this is a final order under a collateral order doctrine analysis so under 1291 is that correct? Yes. That's your theory? Yes. Okay. But didn't you base your jurisdictional statement on 158A3? There was a Belton suspenders request for leave to appeal but when you look at Perlman and you look at Blinder Robinson those cases say that this is an immediately appealable order. So why did you invoke jurisdiction under that discretionary standard because the district court denied leave to appeal? No I understand that and when I looked at the briefs again over the last couple of days I asked myself why did we do that and it was Belton suspenders your honor that's all I can say. All right so you're basically basing it under 1291 then? Yes. Okay. So you don't disagree that federal privilege law applies in bankruptcy court right? I certainly have a serious policy question about that I realize that the case law the statutes all go that way but what we have here is a situation where the parties entered into a California agreement under California law for California litigation and there was a California understanding and three or four years later when Gerson Fox filed for bankruptcy under this application of the law his understanding that he had not waived his attorney-client privilege would be his attorney-client privilege by allowing his son Ted to handle the written communications of what Gerson did or did not want. What Gerson was or was not asking for. I'm not following at all your answer to Judge Ikuda's question. I mean you've sort of gone on to never land. You've waxed sardic once again about the beauties of state privilege law. Do you remember the question? I remember the question. Why don't you try answering the question and then you can wax sardic and maybe you'll understand what you're being sardic about. Yes I do understand the bankruptcy law and I do understand that. No no I'm not asking for your understanding. I don't want to know what's in your heart or what you've learned. What is the answer to Judge Ikuda's question? Yes bankruptcy law applies. I recall that was the question. That was not the question. The question is federal law applies. Federal law of privilege applies in bankruptcy court. Correct. Correct. Although the way I read the cases. I'm sorry is that the correct but? Correct. Okay. And under federal law. So I mean you know all that stuff about the small. You're just wasting time. You're just wasting your time right. I disagree but under federal law. Well persuade me. I mean you know I'm not you know you now say there's federal law and you spend all that time talking. So what's the connection? Why are you spending your clients money talking about something that as best I can tell you can now concede is irrelevant. Well I don't but under federal law the I'm sorry you don't concede it's irrelevant? Well how is it relevant if you said this federal law applies? I see it as relevant because during the time of these communications, during the time of the writings it issued, it was covered by California state law which takes a more relaxed view of what a I understand that. I understand that. So what? If federal law applies, so what? The fact there was a more relaxed standard way back then. That's a part you haven't explained. The question is whether under federal law. No the question is so what? That's now the pending question. The so what is this? Under federal law there was a requirement that it be shown that it was reasonably necessary or necessary for Ted Fox to act on behalf of his father in sending these written communications. And we believe that the record that was before the bankruptcy court and the district court did that. Judge. That's all federal law. I'm still The problem is every time you get into federal court and you have parties that have dealt with clients before they got into federal court, their privileges were entirely controlled by state law. That's just the way it is because you live in the state. Then you get into federal court and when federal court we have exactly the rules. It's diversity. It's different than it's federal question. But once in a while you get into federal court and you switch to federal privileges. And that's just what happens. So I'm not sure I understand how your case is any different from every run of the mill federal case where the parties have acted with an understanding that state privilege law applies and then on federal court. How is your case any different? And why is your why is federal state privilege law any more applicable here than any other federal case? Well, the way I see it is that when these communications took place, it was state law that applied and that was made in the federal court was sufficient to preserve the privilege. We believed it was. Judge Blue Bond disagreed. Judge G disagreed. We asked Judge Blue Bond that in light of her disagreement, we be allowed two weeks to submit supplemental declarations that would go into the issues and questions she had raised. And she said no. And we think that was an abuse of discretion. Did you ever ask for an evidentiary hearing on that issue? What we did ask for was leave to submit additional declarations on behalf of Gerson Fox's condition on behalf of why Ted Fox to provide more detail as she had asked for. One of her questions was you haven't shown like for instance whether he had Alzheimer's. We asked Judge Blue Bond for two weeks leave to submit additional declarations to deal with this specific issue that she had raised. What was it about Gerson Fox's condition that required that Ted Fox act as a liaison in sending and receiving Gerson's communications, written communications? And that was denied. Did she say why it was denied? She said you've had enough time. She said you should have known this. That's what she said. And you're claiming that's an abuse of discussion. I pardon you. The standard is abuse of discussion. Does she abuse of discussion? I think she abused her discretion in refusing to grant us leave, two weeks leave to submit additional declarations. I assume we would disagree with you on that point. I'm not saying we will, but I'm just saying assuming we do. Do you still have a case on the current record? I believe we do because the court will recall the Gerson Fox and Ted Fox declarations submitted to the express request and stated that express. Did it say he had dementia? I didn't recall that it had anything in there about his difficulty in comprehending or communicating. And in fact I thought your brief was limited to written communications and you made no claim about oral communications. There is no claim about oral communications. So he was sufficiently competent to communicate orally with his attorney. That's what I understood from your brief. That you weren't arguing otherwise. Is that correct? The argument has never been about oral communications, although the court will recall that in Mr. Ormond's declaration submitted by the Buckhalter firm in opposition to the request for a stay, he says that during the first, as I recall, it was four months of the relationship between Buckhalter and Fox that Mr. Gerson Fox was really too ill to be dealt with. But it wasn't referring to his mental competence or I didn't see that. It was not referring to his mental competence. Okay, thank you. But you offered to submit declarations that did refer to his mental competence? The declarations would have referred to his lack of skill and inability in written communications via e-mails the way Ted Fox communicated because what we're talking about here is the Ted Fox e-mails. To Buckhalter and the Buckhalter e-mails back. Okay, well, at least one of our colleagues refuses to use e-mails and I don't think he's incompetent or inability to communicate, so I'm not sure how far that goes. We believe that the supplemental declarations would have shown that Gerson Fox really had no ability to communicate via e-mail and that he relied on Ted Fox to. He didn't have a Facebook page or tweet account? No, Your Honor, he didn't. Really? Okay. Just one more clarification. I know we're over the time, but the privileged communications that you seek to protect were e-mail communications, is that correct? That's correct. Only e-mail communications? Only e-mails. And so Ted was asking only to be the agent for those communications? That's correct. Okay, thank you. Thank you, Your Honor. We'll hear from the trustee. Good morning. May it please the Court. Ryan O'Day of Shulman Hodgson Bastion on behalf of the Chapter 7 trustee. First and foremost, this seems to be to me a pretty cut and dry issue of jurisdiction. Looking at jurisdiction under 28 U.S.C. 1291, that being a final decision of the district court, this was a denial of a leave to appeal. That is a discretionary action of the district court. Why don't we have jurisdiction under 1292A1? Because, in effect, the district court was refusing a stay, so refusing an injunctive relief. Well, I think the issue is this. If the stay were denied and leave to appeal were denied, what impact does the deny of a stay of appeal that otherwise goes away have any impact on this case? I would say logically... Can you say that three times fast? I probably couldn't. Can you say it one time in English? So we had a litigant asking a district court for leave to appeal. Contemporaneous with that request was a request for stay pending appeal. What impact does the denial of a stay pending appeal... You're asking us questions? Have a... I'm sorry, you're asking us questions? It's not your job. Your job is to give us answers. Understood. So tell me, make your argument. The denial of a stay... You remember Judge Ikuda's question. Yes. Denial of a stay pending appeal has no impact when the appeal goes away by virtue of denial of a motion for leave to appeal. Well, of course it has an effect, because at that point they have to cough up the document. Buck Alter has to present the documents. It'll change things in the real world. Of course it makes a difference. I don't understand how you can argue otherwise. The district court's order denying stay pending appeal... That's right. The district court's order denying leave to appeal were contained within the same... Forget about the leave to appeal. So the district court denied FOX's emergency motion to stay the bankruptcy court's order. Is that right? That's in my notes. Correct. And then that order denied a motion for a protective order. That was part of the order, right? Correct? It denied a motion for leave to appeal. And a leave to appeal. But according to my notes, it also denied a motion for a protective order, so that FOX wouldn't have to provide, or that Buck Alter wouldn't provide the documents. No, Your Honor. So there was no motion for a protective order? The motion for protective order was presented to the bankruptcy court. The bankruptcy court denied that order. Denied it. They appealed with a leave to appeal to the district court. The only two pending motions for that district court was a motion for leave to appeal and a motion for stay pending appeal. But the denial of the protective order had the effect of compelling the disclosure of the allegedly privileged documents, did it not? Absolutely, Your Honor. So why isn't that like a mandatory injunction that would be appealable under 1292? I think the issue is what is on appeal before this court is the district court's denial of the motion for leave to appeal. That is the precipitating event that ended the appeal. It's not an affirm, it's not a reversal, it's not a reverse and remand. But they wouldn't need, they wouldn't go under A3, they'd go under A1 because it is in effect a final order because it has the effect of directing the production of a document. How else would they possibly seek review of that? So in the Ninth Circuit, I'm not aware of a published decision by any court that addresses the issue. My brief cites a First Circuit case that says a district court sitting as an intermediary appellate court of a bankruptcy decision, that district court's denial of a motion for leave to appeal is itself an interlocutory order. The First Circuit found that as such. But this is not the leave to appeal part. It is the denial of the stay part that we're talking about. I mean, I'm just looking at the district court order and it says, its title is Order Reappellants Emergency Motion for a Stay of the Bankruptcy Court's Order. And note that it also filed a motion for leave to appeal. The last sentence or last paragraph of that order, Your Honor, also denies the motion for leave to appeal and dismisses the appeal. It says the court denies the Fox Party's emergency motion to stay and their motion to stay. Additionally, because the Fox Party's motion for leave to appeal is based on the same arguments, the motion for leave to appeal is also denied. So apparently the district court thought it was denying an emergency motion to stay and a motion to stay, as well as a motion for appeal. Because those were the two motions before it, Your Honor. Okay. And so in denying that motion to stay, I'm still wondering why that doesn't come within the language of 1292A1, an interlocutory order denying an injunction. I think the issue is what is to be stayed. I'm not sure what appeal or what right would be stayed pending appeal when the underlying appeal is dismissed by virtue of a denial of motion for leave to appeal. It's sort of a chicken or the egg conundrum. I don't think you can analyze the denial of a stay pending appeal without looking at in tow the denial of the motion for leave to appeal. It's the denial of the protective order that would have protected this privileged information from being disclosed. Correct. How else would you seek review of that? The bankruptcy court's denial. The district court didn't deny a motion for protective order. The bankruptcy court did. They refused to hear it. The bankruptcy court heard on the merits the motion for protective order. The district court never got that far. Correct. Making this an interlocutory order. Well, we know it's an interlocutory order unless opposing counsel's Perelman argument prevails. But we do have authority to hear certain types of interlocutory orders, so that's what we're trying to determine. Sure. I don't believe it falls within the subsection of 1293. Is it A-1? 1292-A-1. I don't believe that it's an injunction within the parameters of what that statute considers. Okay, thank you. Nonetheless, moving forward, I want to address a few points. There was a significant amount of discussion about the lack of evidence that was presented at the bankruptcy court and the bankruptcy court's subsequent denial of counsel's request to submit additional declarations. Putting some color behind the basis for that court's denial, in my opposition or the trustee's opposition, we highlighted what the proper standard was and how the evidentiary basis of their motion for protective order was deficient. There was no secret, no surprise. The bankruptcy court, as made clear in the transcript, stated that you had your opportunity. The trustee told you where your motion came short and your reply did not produce additional declarations that shored up the problems that we had pointed out. So the bankruptcy court, in its discretion, said I'm not giving you more time. You knew what you should have put forth. So at the end of the day, what we have now been told... So why isn't what they said enough? Why they haven't said? Okay, well, the declarations point out two things, age and health. Ginsburg is in her 80s, but no one, I guess not everyone would say that her age, you know, precludes her from conducting her own legal affairs. I don't know how age in and of itself would preclude one from conducting his or her own legal affairs. It's age and health. They can't sort of look at them separately. So, you know, trying to dissect them just sort of undermines your argument. Trying to say, you know, separate them out and say, well, he's not... I think the issue is... These are all people who don't use computers to communicate. But using... So what's so strange about that? I know lots of people about that age that don't use computers, don't have computers. So I think my response is kind of two parts. Your question had a few components to it. But first and foremost, age and health, blandly saying I'm old or I'm of ill physical health, doesn't close the loop how the age or the health precluded one from conducting his or her own legal affairs. And that's the issue here. So what if Mr. Gerson Fox had a secretary and he dictated his e-mails to the secretary and sent them to the lawyer? Would the secretary's work there cause Mr. Fox to lose the privilege under federal law, in your view? I'm not sure, Your Honor. I think the issue in what we've been told, at least today, at first I've heard about it, but the declarations that Gerson would have submitted would have detailed his inability to use a computer or e-mail. But that's not the standard at federal court. Well, did you hear Judge Kudo's question? I don't understand why counsel just keep ignoring Judge Kudo's questions. They're very good questions that I am interested in hearing the answer to. Do you remember the question? And I do believe I answered it, Your Honor. I don't think you did. I said I do not know. You do not know where the secretary is. Well, you're not helping your client any at all if you don't want to answer the question or express a view. So let me ask you a question. Let's say that Mr. Fox only speaks Yiddish or Hungarian or something like that, one of those languages. And he has a son who is bilingual or a secretary who's bilingual, and he says in his own language what he wants, and the son then transmits it, you know, translates it into English and sends a letter to the lawyer.  I think Your Honor has laid out a wonderful case for the applicability of these specials. Well, I don't need a compliment. How about just an answer? How about an answer to my question? Your Honor, you have highlighted why it is necessary. I want an answer. Don't tell me what I've done. That would not waive the privilege under Federal law, reason being the translator is necessary to effectuate the legal representation of that individual. So you're saying they didn't establish that they met the reasonably necessary standard. It's a necessary standard. Well, why is it necessary? They can find a Hungarian-speaking lawyer. It's not necessary in the sense that it can't be done any other way. Just find a lawyer who speaks Hungarian or Yiddish. There are those lawyers around. You know, it would be exceedingly inconvenient. But why is it not necessary? I think it's a sliding scale of what is necessary, Your Honor. Again, we're digging into a fact pattern that isn't the fact pattern we have here. What do we have here? We have a request from this man's son to include him within the attorney-client privilege, correct? Was that ever responded to by the lawyer? Buck Holter, I believe, did not respond to the email. Why not? I'm not Buck Holter. Who knows? I do not know. Well, but doesn't that beg for either an evidentiary hearing or for some further inquiry into why? Your Honor. Because he obviously has a client who needs or who apparently needs some sort of interpretation. It could be a language interpretation or it could be the lack of computer skills or email skills or whatever it happens to be. And the lawyer just ignores it and keeps sending him the very communications that the son says he's not able to handle. What else do you need for a privilege under those circumstances? I believe I would preface it maybe as a hypothetical, Your Honor, because I think everything that was just said is not supported by the record. We have a request. We have an email request that was ignored by the lawyer. Do you think that's right? I think at the end of the day, wishing, hoping, or labeling something as privilege doesn't make it so, Your Honor. There is a failure of evidence to show that the communication through a liaison was necessary. The bankruptcy court rested its decision upon the fact that there is nothing in the evidence showing its necessity. I think Your Honor's comments backfill the lack of evidence here. And I think that's the issue. I don't understand how that is the case. We have a declaration from the son. They say, look, they're old and sick. Right. And they can't communicate by email. It did not say that. There is nothing in the record that said he cannot communicate by email. As I pointed out in the brief, I faulted them for padding the record because that is not contained in the evidence. Not only in the evidence, it's not even an attorney argument. They don't put it in the brief. But these were all email communications, right? Yes. Okay. And so your argument would be different if they had said can't communicate by email. You would stand down. It would not be different if you could communicate. The issue is not whether a client has the technological prowess to use a computer. The issue is does the client have the ability to communicate with the attorney to effectuate his or her legal representation. It's not the manner in which the client communicates. It's communication itself. It's a question of how much convenience or inconvenience you have to suffer in order to effectuate a communication. What about you don't have a view on Judge Ikeda's question about the secretary. You know, somebody who is an executive, not used to typing, sort of an old style executive that uses secretary or secretaries to type up all communications for the world. Well, I think thinking about that, why I think. I mean, the president would almost never have. Well, you know, most of what the president does officially is typed by somebody else. Understood. But when that correspondence comes out from the president, it's under his name. It might say transcribed or typed by, but it says President Trump or President Obama is saying this. We don't have that here. We have Ted Fox is saying something. We can presuppose he's saying what Gerson told him to say, but there's nothing in the evidence for that either. We have Ted Fox sending e-mails back and forth with Buckhalter. We have nothing that proves my dad told me to convey this to you. We have, and I've read the e-mails. They seem to be freewheeling. I'm sorry. We don't have anything that says this is what my dad told me to convey to you. Nothing in the evidence in support of their motion for. And if there were, you would stand down. Absolutely not. You keep pointing out these things, and then when I ask you about it, you say, no, it doesn't matter. Look, I think it's. So let's say this were on the record. Everything I said in those e-mails I got from my dad. Let's say that were on the record. Sure. Just imagine. Okay. What would your analysis be there? My analysis. What would your beef be there? My beef would be that irrespective of that being your father's words, why was your role as the middleman or liaison necessary to effectuate his legal representation? That is the ultimate question, and that is what must be determined for the applicability of the federal attorney-client privilege law to apply when a third party is conveying a message to the attorney. In the briefing, the only case I saw relied on for representative privilege was in Raynorth Plaza, LLC. Are there other, which was a district court case, are there other cases that set out what the federal law of representative privilege is? That was the case I thought that laid it out most succinctly. Have the circuits weighed in on this? Other circuits? I don't think there's anything in our circuit. Not that I'm aware. If I found a circuit court opinion, I would have cited that. So, again, I think it's an issue that hasn't been decided by the Ninth Circuit. Okay. Or by any circuit? Or any circuit. Okay. So how do you know what the federal law is? You say the federal law is with some authority. Because I'm citing to the cases I had in the brief, Your Honor. The district court cases? Yes. I see. But in the absence of Supreme Court authority or any circuit authority, you would agree that what the federal standard is is at least uncertain? Well, the North Plaza case had compiled instances where the attorney-client privilege had extended to third parties. And it came to the conclusion that it only came out in one of two situations. One where the client is a corporation, so by virtue of it being a corporation, it is necessary that someone speak on its behalf. The other cases that it analyzed found that when it's an individual, there had to have been shown that the individual was disabled or otherwise unable to communicate with its attorney or his attorney to effectuate legal representation. So the North Plaza case. Well, you refer to it as a federal standard. I mean, it may be the North Plaza standard. It may be, in fact, but even that same district judge is not bound by that decision. Certainly his colleagues are not bound by it. District judges in other districts in the circuits are not bound by it. District judges in other circuits are not bound by it, right? So it's a little grandiose for you to say that's the federal law. It's one judge's view of what the federal law is. One judge's view who has assimilated the other opinions of other cases and other judges to come to that conclusion. But I agree with you, Your Honor. I'm sorry. Are those circuit cases here assimilated? I don't believe so, Your Honor. District court cases? Perhaps. I don't recall that component of the case well enough to say that it is or is not. It's a bit of an overstatement to say that is the federal law. I think we're trying to decide here what the federal law is. Understood, Your Honor. Okay. I think you're way over your time. Thank you. And I think you were way over your time as well. So I think we're going to submit this case now. So this case is now to be submitted.
judges: Kozinski, Ikuta, Gettleman